UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

STEPHON RENE,

                        Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-22 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 18, 2017, Stephon Rene pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Stephon Rene is hereby sentenced to 121 months of incarceration, 3 years of supervised release, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Stephon Rene ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 18, 2017, Defendant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment, which charged a Narcotics Trafficking Conspiracy. *See* Plea Agreement ¶ 1, ECF No. 434.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now twenty-one years old, was born in Brooklyn, New York on August 14, 1996. Presentence Investigation Report ("PSR") ¶ 67, ECF No. 484. Defendant is one of seven children born to the consensual union of Stanley Rene and Nirva Cherenfant. *Id.* The parents separated in approximately 2002. *Id.* Defendant's father resides in Brooklyn, and is employed in construction. *Id.* Defendant's mother resides at the address of record, and is employed as a home health aide. *Id.* Defendant's parents are aware of his conviction and remain supportive. *Id.* Notably, two of his seven siblings, Stanley Cheranfant and Steven Cheranfant, are co-defendants in the instant case. *Id.* ¶ 69. Defendant stated that he maintains close relationships with his parents and siblings. *Id.* ¶ 71.

Defendant was raised in a lower-income household. *Id.* ¶ 70. At the time his parents separated, Defendant remained with his mother. *Id.* At the age of thirteen, Defendant went to live with his father. *Id.* Defendant told Probation that his mother's residence was overcrowded and he was constantly arguing with his brothers. *Id.* Specifically, Defendant fought with his siblings over "food, the television and video games." *Id.* His father also believed that Defendant was not being supervised properly in his mother's home, as his mother worked long hours. *Id.* While living with his mother, Defendant's eldest sister was responsible for helping him with his homework and making snacks for him. *Id.* Defendant stated that there was no abuse in the home. *Id.* ¶ 71.

Defendant stated to Probation that he withdrew from school in tenth grade because he was constantly bullied over his height and for wearing the same clothes repeatedly. *Id.* ¶ 71. Defendant noted that he never informed his parents about the bullying, as he was embarrassed. *Id.* He also never informed them that he had stopped attending classes, and they were unaware of his withdrawal from school until they were contacted by the school. *Id.* Automotive High School in Brooklyn verified to Probation that Defendant attended their school from July 2, 2010 to June 6, 2014. *Id.* ¶ 87. However, the school indicates that Defendant voluntarily withdrew from school in the twelfth grade, and he completed up to the eleventh grade. *Id.*

Defendant noted that he was struck by a vehicle while riding his bicycle at age sixteen. *Id.* ¶ 77. He advised that he was hit from behind, and he was taken to Kings County Hospital in Brooklyn for treatment. *Id.* Defendant was treated and released from the hospital, and he continues to experience occasional back pain. *Id.* As a result of the accident, Defendant was awarded $13,000 in a civil settlement for his pain and suffering. *Id.* Defendant received the

disbursement at age eighteen, and he gave $8,000 to his parents. *Id.* He advised that he spent the remaining amount on himself. *Id.*

Defendant stated that he previously would get "depressed, stressed and angry." *Id.* ¶ 78. He noted that these emotions started in the sixth grade after he began to get bullied at school. *Id.* Between ages twelve and eighteen, Defendant experienced thoughts of suicide on a few occasions. *Id.* Defendant denied having any current suicidal thoughts. *Id.*

Due to concerns about Defendant's mental state, defense counsel requested a psychiatric evaluation, which the Court granted. ECF No. 514. Dr. Sanford Drob interviewed Defendant and found that the Defendant's profile is "suggestive of a severe mental disorder . . . he is experiencing high levels of stress and turmoil and significant depression and anxiety. The test also raises the possibility of a schizophrenic spectrum disorder, with instability in thinking, mood and behavior. The possibility of delusional thinking is indicated." Drob Report at 6-7, ECF No. 533-1.

Defendant stated to Probation that he first consumed alcohol at age sixteen. PSR ¶ 80. He noted that he would consume alcohol every day from Monday to Friday, and he would share two bottles of Hennessy with friends. *Id.* Defendant admitted that he consumed alcohol to intoxication, but he denied having a problem with it. *Id.* Defendant noted that he first smoked marijuana at age thirteen, and he used it daily from age sixteen up until his instant arrest. *Id.* ¶ 81. He estimated that he spent $200 per week on marijuana. *Id.* Defendant first used cocaine base at age seventeen, and he used it four times per week up until his instant arrest. *Id.* ¶ 82. He advised that he would mix the cocaine base with marijuana. *Id.* Defendant admitted that he was "intoxicated or high" often prior to his instant arrest. *Id.* ¶ 85. He noted that he feels better now;

his head is clear he feels more focused. *Id.* Defendant has never attended drug treatment, but he is open to it while incarcerated and on supervised release. *Id.*

Defendant became a member of the gangs Eight Trey Gangsta Crips ("Eight Trey") and Shoota Gang ("SG"), as well as an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶ 37. The OGC was a gang comprised primarily of individuals residing in and around the East Flatbush neighborhood of Brooklyn, New York, and was a "set," or subgroup, of the Crips street gang. *Id.* ¶ 6. SG was an offshoot of OGC which included members and associates of OGC as well as members and associates of other gangs, including the Eight Trey, Bosses In Business and the Bloods. *Id.* Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6.

Defendant was a street level narcotics distributor and sold cocaine base to various individuals. *Id.* ¶ 15. The Guidelines calculation in the Plea Agreement contemplates that Defendant is accountable for at least 840 grams of cocaine base. Plea Agreement ¶ 2, ECF No. 434; PSR ¶ 37. The Government's investigation revealed Defendant was known to carry firearms as part of his participation in the charged conduct. PSR ¶ 37. In addition, Defendant was also involved in a robbery and attempted murder as charged in Racketeering Act One of the Superseding Indictment. *Id.* However, Defendant did not plead guilty to this charge.

According to Bureau of Prisons SENTRY database, Defendant has been incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York, since July 16, 2015. *Id.* ¶ 74. The database indicates that Defendant participated in the following educational courses: Pre-Trial; Money Smart Older Adults; Parenting Adult Role Model; College Prep English; College Prep Math; Blood Pressure; Community Leadership; Art Program All Units; Card Making; Finance Pre-Trial; Origami; Health Education Program; and Chess Level 2. *Id.* The database also indicates that Defendant is enrolled in high school equivalency classes. *Id.* He has received two disciplinary infractions. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both provided dangerous and illegal drugs to his community and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to Eight Trey, Shoota Gang, and the OGC. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). He faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). Defendant also faces: a minimum term of supervised release of three years, 21 U.S.C. § 841(b)(1)(C); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C); and a special assessment of $100.00, 18 U.S.C. § 3013. Under the Plea Agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. Plea Agreement ¶¶ 6-13.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1 applies to violations of 21 U.S.C. § 846 and sets a base offense level of thirty-two. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(4) (Nov. 2016) ("USSG").

Defendant qualifies for a two-level enhancement under USSG § 2D1.1(b)(1), because the instant offense involved possession of a firearm.

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty,

the offense level is decreased by one additional level. USSG §3E1.1(b). All parties agree that Defendant should receive a three-point reduction for acceptance of responsibility.

In Defendant's Plea Agreement, the Government estimated Defendant would receive a two-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0 . . . only if the conditions set forth in Paragraph 15 [of the Plea Agreement] are satisfied." Plea Agreement ¶ 2. Paragraph fifteen, in turn, provided that the reduction would apply only if: 1) eighteen listed defendants pled guilty by May 17, 2017; and 2) those pleas were accepted by a United States District Court Judge at the time of the plea allocution or, if the plea was taken by a Magistrate Judge, on or before May 31, 2017. *Id.* ¶ 15. At this time, not all of the listed defendants have pled guilty. However, as Probation notes, the Plea Agreement also provided for a one-level reduction for a global disposition:

> [T]he Government has agreed to a 1-level reduction in the guideline range, per Policy Statement 5K2.0. As a result of this agreement, it is anticipated that the defendants will save the over-burdened resources of the Government and the Court. In light of this agreement, the total offense level would be 30, and with a criminal history category of I, the advisory guideline imprisonment range would be 97 to 121 months.

PSR ¶ 114; Plea Agreement ¶ 15. Despite the fact that the conditions of the two-level reduction have not been met, the Government, nonetheless, reiterated its commitment to recommending a two-level reduction in its sentencing memorandum. Gov't Sentencing Mem. at 3, ECF No. 537.

The Court finds that with a three-level reduction for acceptance of responsibility, a one-level reduction for a global resolution, and a two-level enhancement for possession of a firearm, Defendant's total offense level is thirty.

Defendant has no prior convictions providing for a criminal history score of zero, which corresponds to a criminal history category of one. *Id.* ch. 5, pt. A.

Given a total offense level of thirty and a criminal history category of one, the Guidelines suggest a term of imprisonment of between ninety-seven and one-hundred and twenty-one months. *Id.* Defendant may also be sentenced to a term of supervised release of three years, *id.* § 5D1.2(a)(2); a fine of between $15,000.00 and $1,000,000.00, *id.* §§ 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

The U.S. Probation Department recommends a sentence of one-hundred and twenty-one months of imprisonment followed by three years of supervised release with special conditions. *See* Sentence Recommendation at 1, ECF No. 484-1. Defense counsel seeks a significantly below Guidelines sentence, with a focus on strict post-release supervision requiring mental health treatment and monitoring in addition to other programming. Def.'s Sentencing Mem. at 3, ECF No. 533. The Government requests a sentence within the advisory Guidelines range of eighty-seven to one-hundred and eight months. Gov't Sentencing Mem. at 1.

### E. Pertinent Policy Statement of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Under USSG § 5K2.21, the "court may upward depart to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." As Probation notes, "the defendant was involved in a robbery and attempted murder. This additional criminal conduct could not be factored into the defendant's guideline calculation." PSR ¶ 115.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 121 months of incarceration, to be followed by 3 years of supervised release, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED,**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2018
 Brooklyn, New York